T.C. Summary Opinion 2003-83


UNITED STATES TAX COURT


MANUEL FRANCISCO PALOMO AND JANE LYON POTTER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7010-01S.                    Filed June 24, 2003.


    Manuel Francisco Palomo, for petitioners.

    Carina Campobasso, for respondent.


    DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in

effect at the time the petition was filed.  Unless otherwise

indicated, subsequent section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule

references are to the Tax Court Rules of Practice and Procedure.

The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $7,884 in petitioners' 1999 Federal income tax and an accuracy-related penalty of $1,577. After concessions,[1] the issues remaining for decision are: (1) Whether petitioners received unreported income; (2) whether petitioners are subject to additional tax for an early distribution from a qualified retirement plan; and (3) whether petitioners are liable for the accuracy-related penalty due to negligence.

## Background

Some of the facts have been stipulated and are so found. The exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioners resided separately in Northampton, Massachusetts.

Petitioner Manuel Francisco Palomo is an attorney. Petitioner Jane L. Potter organized and directed the Parent Teacher Organization's (PTO) after-school program at Smith College Campus School (Smith). In 1999, Ms. Potter was in charge of the program, planned individual sessions, and was responsible

---

[1] In the notice of deficiency respondent determined that petitioners were liable for additional tax relating to the failure to include income from Norman Ross Publishing, Inc.; for unreported distributions from a qualified retirement plan; for an unreported Mass. State tax refund; and, for unreported interest earned from a bank account. These issues have been resolved by the parties.

for finding and hiring instructors. As part of her responsibilities, Ms. Potter promoted the after-school program through advertising. In 1999, Ms. Potter received checks from Smith, payable to her, in the amount of $3,038. Petitioners received a Form 1099[2] on which Smith reported to the Internal Revenue Service (IRS) that Ms. Potter received $3,038 of income in 1999. Petitioners did not report this amount as income on either their 1999 Form 1040, U.S. Individual Income Tax Return, or their 1999 Form 1040X, Amended U.S. Individual Income Tax Return.

In March 1999, both Ian Potter, Ms. Potter's father, and her sister Susan Potter became seriously ill. Petitioners determined that it was necessary to travel to Florida so they could tend to their ill relatives. Petitioners withdrew $14,389 from a qualified retirement plan (IRA) to help pay for medicines, food, their flights to and from Florida, and other expenses related to Mr. Potter's and Susan's illnesses. Mr. Potter died on June 29, 1999, and Susan died on July 31, 1999. Petitioners did not pay rent for Mr. Potter or Susan, and they did not keep track of their expenses while in Florida.

Petitioners timely filed their 1999 Federal income tax return. Petitioners filed a Form 1040X on or about April 16,

---

[2] A copy of the form was not produced at trial. The Court assumes the form was a Form 1099-MISC, Miscellaneous Income.

2001. Changes on the Form 1040X reflect an "Addition of IRA distributions not previously reported", and an "Addition of medical expenses incurred for care of Ian L. Potter and Susan Potter".

In the statutory notice of deficiency, respondent determined a deficiency in petitioners' 1999 Federal income tax of $7,884 for 1999 and an accuracy-related penalty of $1,577.

## Discussion

Taxpayers generally bear the burden of proving that the Commissioner's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Under section 7491(a)(1), however, the burden of proof shifts to the Commissioner if, among other requirements, the taxpayers introduce "credible evidence with respect to any factual issue relevant to ascertaining" their tax liability. We find that the burden of proof does not shift to respondent because petitioners have failed to comply with the requirements of section 7491(a)(1).

Section 61 provides that all income, from whatever source derived, is includable in gross income unless specifically excluded by another provision. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Section 61(a)(1) specifically includes in gross income amounts received as compensation for services, including fees, commissions, fringe benefits, and similar items.

Respondent determined that the payments Ms. Potter received from Smith, as reported to the IRS on a Form 1099, are unreported income. Respondent's position is that the payments must be considered payments for services rendered because petitioners failed to provide any documentation that they were reimbursements for out-of-pocket expenses.

Petitioners' position is twofold. First, petitioners argue that because similar checks from Smith were not treated by the IRS in 1997 as income, that they should not now be treated differently. Each taxable year, however, stands alone, and the Commissioner may challenge in a succeeding year what was condoned or agreed to in a former year. Rose v. Commissioner, 55 T.C. 28 (1970). Thus, a taxpayer must follow the reporting requirements in any given taxable year to be entitled to deduct or exclude certain expenses from income, even if the Commissioner did not challenge a similarly claimed deduction in a prior year. As a result, what occurred in relation to petitioners' 1997 taxes is inapposite to the decision in this case.

Second, petitioners argue that they did not include in income the $3,038 received from Smith because it was a reimbursement for out-of-pocket expenses that were related to the administration of the after-school program. This Court is not bound to accept a taxpayer's self-serving, unverified, and

undocumented testimony.  <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

Smith issued a Form 1099 stating that Ms. Potter received $3,038 in 1999.  Ms. Potter testified that she was not compensated by Smith for her involvement in the after-school program.  She does, however, admit to receiving "reimbursement checks".  Other than their testimony, petitioners have presented no evidence to substantiate their position that the money from Smith represented reimbursements for Ms. Potter's out-of-pocket expenses.  Ms. Potter testified that the checks from Smith were "to cover the cost of the advertising and the, the copying costs, the color copying costs, of all the programs that I was trying to run."  She claims to have given the receipts to a secretary, and that a treasurer of the Smith PTO wrote the reimbursement checks.  Mr. Palomo testified that when preparing their Federal income tax return he ignored the Form 1099 petitioners received because, based on his mental calculations, "it was going to be a wash."

In a prior hearing before this Court, Mr. Palomo agreed to do his best to provide names, telephone numbers, and addresses of people involved with the Smith PTO.  At no point, however, did petitioners provide the name or names of anyone at Smith to verify their claims.

Petitioners have not provided either the Commissioner or the Court with any evidence substantiating the existence of out-

of-pocket expenses.  Because petitioners have failed to substantiate that the Smith payments were reimbursements for out-of-pocket expenses, we concur with respondent's determination as to this issue.  Sec. 6001.

In general, section 72 deals with the tax treatment of distributions from pensions, annuities, and IRAs.  See secs. 72(a), (e), 408(d).  Section 1.72-1(a), Income Tax Regs., provides that section 72 prescribes rules relating to the inclusion in gross income of amounts received under a life insurance, endowment, or annuity contract unless such amounts are specifically excluded from gross income under other provisions of chapter 1 of the Code.  The burden is on petitioners to demonstrate that the payments in question fall into a specific statutory exclusion.  See Commissioner v. Glenshaw Glass Co., 348 U.S. at 429-431.

Under section 72(t), a 10-percent additional tax is imposed on an early distribution from a qualified retirement plan, to the extent that the distribution is includable in gross income.[3]  An exception to the additional tax is provided in section 72(t)(2)(B) for medical expenses.  Section 72(t)(2)(B) provides

---

[3] An early distribution with respect to a distributee who continues employment with the employer is one made before the employee attains the age of 59-1/2.  See sec. 72(t)(2)(A)(i).  It is unclear what the age of either petitioner was at the time of the distribution from the IRA.  The Court concludes, based on the unrefuted assumptions made at trial and in the exhibits, that neither petitioner had attained the age of 59-1/2.

that the additional tax does not apply to "Distributions made to the employee * * * to the extent such distributions do not exceed the amount allowable as a deduction under section 213 to the employee for amounts paid during the taxable year for medical care".

Section 213 allows a deduction for expenses paid during the taxable year, not compensated by insurance or otherwise, for medical care of the taxpayer, his spouse or a dependent (as defined in section 152), to the extent that such expenses exceed 7.5 percent of adjusted gross income. As relevant here, section 152(a)(1) defines a "dependent" to mean a taxpayer's father or sister who received or is treated under section 152(e) as having received over half of his or her support from the taxpayer for the calendar year in which the taxable year of the taxpayer begins. To claim a dependent, taxpayers must establish the total amount of support furnished from all sources for the taxable year at issue and demonstrate that they provided the claimed dependent with over half of the amount. See Archer v. Commissioner, 73 T.C. 963, 967 (1980); Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971); sec. 1.152-1(a)(2)(i), Income Tax Regs.

While petitioners testified that they provided some support to Mr. Potter and Susan, the Court cannot conclude that petitioners provided more than one-half of the total support for either of them. Ms. Potter testified that in 1999 Mr. Potter

received income from a pension.  It is also important to note that petitioners did not list Mr. Potter or Susan as dependents on either their Form 1040 or Form 1040X.  As a result, the Court concludes that neither Mr. Potter or Susan qualify as petitioners' dependents under section 152.

Even if Mr. Potter and Susan were qualified dependents, petitioners failed to satisfy the substantiation requirements of section 1.213-1(h), Income Tax Regs.  Petitioners claimed a medical expenses deduction of $9,847.  Petitioners provided a computer printout detailing the expenses but failed to provide any underlying evidence or documentation to substantiate the claimed deductions.  During trial Mr. Palomo was questioned about the discrepancy between the amounts shown on his computer printout and the Form 1040X.  Petitioners' Form 1040X shows $9,847.00 of Medical and Dental Expenses and the computer printout shows $4,607.45 in medical expenses.  Mr. Palomo testified that he determined the total amount spent while in Florida by estimating the amount they spent each day and multiplied it by their total number of days in Florida.  Mr. Palomo's testimony failed to provide a satisfactory explanation as to the differences in the amounts; it was improbable, vague, and as a result, unreliable.

Petitioners are not entitled to deduct the claimed medical expenses and as a result cannot offset any of the 10-percent additional tax due because of the early withdrawal from their

IRA. Accordingly, the Court sustains respondent's determination as to this issue.

Respondent also determined that a section 6662 accuracy-related penalty is due with respect to petitioners' tax return for 1999.

Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment attributable to negligence or disregard of rules or regulations. See sec. 6662(a) and (b)(1). Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

Pursuant to section 7491(c), respondent bears the burden of production with respect to a section 6662 penalty. In order to meet respondent's burden of production, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the accuracy-related penalty in this case. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, the accuracy-related penalty does not apply if petitioners demonstrate that there was reasonable cause for the underpayment and that they acted in good faith with respect to the underpayment. See sec. 6664(c). Whether taxpayers acted with reasonable cause and good faith depends on the pertinent facts and circumstances. See McCallson v. Commissioner, T.C. Memo.

1993-528; sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the taxpayer's effort to assess his proper tax liability.  Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.

Taxpayers are required to keep records sufficient to establish the amount of deductions or other matters required to be shown on their returns.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Failure to maintain adequate records may constitute negligence.  Schroeder v. Commissioner, 40 T.C. 30, 34 (1963).

The record here shows that Mr. Palomo is a highly educated individual.  The Court finds it unreasonable that petitioner, an attorney, would base his analysis of taxable income on knowledge from a class he took 20 years earlier in law school rather than from appropriate legal research.  Petitioner testified that he failed to even make the minimal effort of consulting the IRS information booklet that accompanied his Federal income tax return.  The Court finds that his explanations do not demonstrate an honest misunderstanding of fact or law that is reasonable in light of his experience, knowledge, and education.

The Court concludes that petitioners failed to keep adequate records.  The Court also finds that petitioners failed to make a reasonable attempt to determine whether they were entitled to take medical expense deductions for Mr. Potter and Susan and whether they were allowed to omit the Smith income from their

return.  Further, petitioners failed to produce any evidence to show that they acted with reasonable cause and good faith for the year at issue.  Thus, the Court sustains respondent's determination that petitioners are liable for the accuracy-related penalty under section 6662(a) for 1999.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>under Rule 155</u>.